UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

UNITED STATES,

-against-

PABLO ARTURO PINEDA,

        Defendant.

**MEMORANDUM & ORDER**
**18-CR-523 (NGG)**

NICHOLAS G. GARAUFIS, United States District Judge.

Defendant Pablo Arturo Pineda is charged with one count of illegal reentry in violation of 8 U.S.C. §§ 1326(a) and (b)(1). (*See* Indictment (Dkt. 1).) Section 1326(a) makes it a crime for a person who "has been denied admission, excluded, deported, or removed" from the United States to reenter the country. The indictment asserts that Mr. Pineda had "previously been deported and removed from the United States" (*id.* at 1), a claim predicated on an administrative order of removal. (*See* Final Administrative Removal Order ("Removal Order") (Dkt. 13-10).) Before the court is Mr. Pineda's motion to dismiss the indictment pursuant to Federal Rule of Criminal Procedure 12. (Mot. to Dismiss Indictment ("Mot.") (Dkt. 13)).

For the reasons stated below, Defendant's motion is DENIED.

## I. BACKGROUND

### A. Facts

Mr. Pineda was born in El Salvador on September 18, 1978 and is a citizen and national of El Salvador. He entered the United States via California in or around 1997, and applied for Temporary Protected Status ("TPS") on or about April 6, 2001. (*See* Appl. For Temporary Protected Status ("TPS Appl.") (Dkt. 13-2).) He was approved for employment authorization on June 28, 2001 and his TPS application was fully approved on June 10,

2004. (*Id.*) On September 20, 2005, Mr. Pineda was convicted in a Texas state court, after pleading guilty to the offense of Indecency to a Child Younger than 17 years in the second degree, a violation of Texas Penal Code § 21.11(a)(1). (*See* Tex. Criminal J. (Dkt. 13-3).) He was sentenced to four years in custody and fined $2,000. (*Id.*)

On September 11, 2006, the Department of Homeland Security ("DHS") prepared a record of deportable alien for Mr. Pineda based on his conviction. (*See* R. of Deportable Alien (Dkt. 13-4).) That same day, DHS interviewed Mr. Pineda, who provided a sworn affidavit in response to questioning. (*See* R. of Sworn Statement (Dkt. 13-5).) The sworn affidavit included a pre-printed questionnaire that was written in both English and Spanish. (*Id.*) While it is unclear from the form which language was used in the interview, Mr. Pineda asserts that the interview was conducted "mostly in English, some in Spanish." (See Aff. of Pablo Pineda ("Pineda Aff.") (Dkt. 21-1) ¶ 7a.) Mr. Pineda indicated on the sworn statement (based on prompts in English and Spanish) that he understood his rights and that he was willing to waive those rights to speak with the DHS officer. (*See* R. of Sworn Statement.) He also indicated that he had a fear of prosecution or torture should he be removed from the United States. (*Id.*) The sworn statement contains a certification in both English and Spanish that "the answers attributed to me herein are true and correct to the best of my knowledge and belief and that this statement is a full, true, and correct record of my questioning by the above-named officer of the Immigration and Naturalization Service." (*Id.*) Mr. Pineda signed the sworn statement before an INS Officer, who filled in his or her name (*Id.*)

However, Mr. Pineda asserts that he was never given the sworn affidavit to read at the time he signed it, and that he was not given a copy after he signed it. (Pineda Aff. ¶ 7-e.) He asserts that because the September 11, 2006 interview was conducted mostly

2

in English, he "did not understand most of what" the officer said. (*Id.* ¶ 7-a.) According to Mr. Pineda, the officer told him that "if I didn't sign the papers, I wouldn't get good time," and he answered the questions because he "thought it would help with parole."(*Id.* ¶¶ 7-b, 7-d ("I signed the papers because I thought they would help me get out of prison.").) Mr. Pineda claims that the officer did not tell him that the answers he gave could be used against him. (*Id.* ¶ 7-b.) Mr. Pineda further asserts that, other than signing the sworn affidavit at the direction of the officer, he did not fill out any other parts of the document. (*Id.* ¶ 7-e.)

Thereafter, immigration officials instituted expedited removal proceedings against Mr. Pineda pursuant to 8 U.S.C. § 1228, which provides for "[e]xpedited removal of aliens convicted of committing aggravated felonies."[1] On April 20, 2007, INS prepared a Form I-851, Notice of Intent to Issue a Final Administrative Order ("Form I-851") for Mr. Pineda. (*See* Notice of Intent to Issue a Final Removal Order (Dkt. 13-8).) The Form I-851, written entirely in English, advised Mr. Pineda that he was subject to administrative removal proceedings based on the allegations that he was not a citizen of the United States and that he

---

[1] "Generally, when an alien is charged with removability for having been convicted of an 'aggravated felony,' the INA requires that the alien be afforded a hearing before an [Immigration Judge], where the alien may contest the factual or legal basis of his removability." *Etienne v. Lynch*, 813 F.3d 135, 138 (4th Cir. 2015) (citing 8 U.S.C. §§ 1229, 1229a; 8 C.F.R. § 1240.10(c)). The right to a hearing before an Immigration Judge ("IJ"), however, only applies if the noncitizen who was convicted had been lawfully admitted to the United States for permanent residence. For noncitizens like Mr. Pineda, who have been convicted of an aggravated felony and have not been lawfully admitted to the United States for permanent residence, the INA authorizes an expedited removal process, without a hearing, at which "a DHS officer, who need not be an attorney, presides" in place of an IJ. *Id.* at 139 (citing 8 C.F.R. § 238.1(a)). Noncitizens who are deportable but who have not been convicted of an aggravated felony are likewise afforded an opportunity to be heard before an IJ.

had entered the United States without inspection. (*Id.*) Under the heading "Charge," the Form explained that Mr. Pineda was deportable because he had been "convicted of an aggravated felony," and, based on 8 U.S.C. § 1228(b), was subject to removal without a hearing before an Immigration Judge ("IJ"). (*Id.*) The Form I-851 did not provide any more specifics about the aggravated felony conviction; in fact, although it explained that an aggravated felony is defined by the INA, it left blank the relevant statutory section. (*Id.* ("[Y]ou have been convicted of an aggravated felony as defined in section 101(a)(43)(  ) of the Act, 8 U.S.C. 1101(a)(43)(  ).").

The Form I-851 further advised Mr. Pineda of his rights and responsibilities, including, *inter alia*: he could be represented by counsel; he had to respond to the charges within 10 calendar days of the service of the Notice but could request an extension of time to respond; he could rebut the charges, request an opportunity to review the government's evidence, admit deportability, designate the country of removal, and, if he feared persecution or torture, request withholding of removal under statute or the Convention Against Torture. (*Id.*) He was also advised that he could petition for review of the order in the appropriate United States Court of Appeals within 30 days of the date of the final removal order. (*Id.*)

On August 20, 2007, the Form I-851 was served on Mr. Pineda in person. (*Id.*) On the back of the Form I-851, the Certificate of Service states that an Immigration Enforcement Agent "explained and/or served this Notice of Intent to the alien in the English/Spanish language" with "Spanish" circled. (*Id.*) Directly below, Mr. Pineda signed under a line stating: "I acknowledge that I have received this Notice of Intent to Issue a Final Administrative Removal Order." (*Id.*). Further down the document, there is a section captioned: "I Wish to Contest and/or to Request Withholding of Removal" that contains several check boxes. (*Id.*).

Mr. Pineda did not fill out this section; instead, he filled out a section further down the page captioned: "I Do Not Wish to Contest and/or Request Withholding of Removal." (*Id.*) In that section, Mr. Pineda selected a check box that read:

> I admit the allegations and charge in this Notice of Intent. I admit that I am deportable and acknowledge that I am not eligible for any form of relief from removal. I waive my right to rebut and contest the above charges. I do not wish to request withholding or deferral of removal. I wish to be removed to [El Salvador].

(*Id.*) Below that, Mr. Pineda selected a check box that stated: "I understand that I have the right to remain in the United States for 14 calendar days in order to apply for judicial review. I do not wish this opportunity. I waive this right." (*Id.*)

In his affidavit, Mr. Pineda denies that the Notice was translated into Spanish, denies that he was particularly notified of his rights and responsibilities as detailed on the first page of that document, denies that the Certificate of Service was translated into Spanish, and denies that he understood that he was giving up his right to contest or request withholding of removal. (*See* Pineda Aff. ¶¶ 8a-f.) Mr. Pineda further avers that he was told his removal would be automatic, that he was told he had no right to a hearing before a judge, and that he was told it was "his problem" that he feared returning to El Salvador. (*Id.*)

On January 9, 2009, after the completion of Mr. Pineda's Texas sentence, he was taken into immigration custody and provided with a Notice of Custody Determination ("NCD"). (*See* Notice of Custody Determination (Dkt. 13-9).) The NCD advised Mr. Pineda that he was being detained by INS. He signed the NCD, acknowledging receipt and indicating that he was not seeking a redetermination of the custody decision by an IJ. (*Id.*) In his affidavit, Mr. Pineda asserts that the NCD was not translated into Spanish for him and claims that he signed it without knowing its

5

meaning, and did not fill out any other portion of the document. (See Pineda Aff. ¶ 9.) On January 30, 2009, Mr. Pineda was deported. (*See* Mem. in Supp. of Mot. ("Mem.") (Dkt. 13-1) at 6.)

Sometime prior to June 21, 2018, Mr. Pineda reentered the United States illegally. (*See* Gov't Mem. in Opp. of Mot. ("Gov't Opp.") (Dkt. 24) at 8.) On June 21, 2018, Mr. Pineda was arrested in New York, and on September 25, 2019, pleaded guilty to Course of Sexual Conduct Against a Child in the 2nd Degree: Two or More Acts against a Child under the Age of 11, in violation of New York Penal Law § 130.80(1)(A). (*Id.*) He was sentenced to a term of four years of imprisonment and five years of post-release supervision. (*Id.*) Mr. Pineda also pleaded guilty to Sex Offender Registry Violation in violation of New York Corrections Law § 168-f, for which he was sentenced to one year of imprisonment. (*Id.* at 9.) His conditional release date for his New York State convictions is November 20, 2021, and his maximum expiration date is June 18, 2022. (*Id.*)

### B. Procedural History

On September 27, 2018, Mr. Pineda was charged in an indictment with illegal entry, in violation of 8 U.S.C. §§ 1326(a) and (b)(1). (Indictment.) On March 13, 2020, Mr. Pineda filed the present motion to dismiss the Indictment pursuant to Federal Rule of Criminal Procedure 12. (*See* Mot.; Mem.) The government opposed Mr. Pineda's motion on May 1, 2020 (Gov't Opp.), and Mr. Pineda replied on May 29, 2020, (Def. Reply ("Reply") (Dkt. 20)).

## II. LEGAL STANDARD

"A charge in an indictment is insufficient and must be dismissed when it does not describe conduct that is a violation of the criminal statute charged." *United States v. Benitez-Dominguez*, 440 F.

6

Supp. 3d 202, 205 (E.D.N.Y. 2020).[2] "Rule 12 authorizes defendants to challenge the lawfulness of a prosecution on purely legal, as opposed to factual, grounds." *Id.* "A defendant charged with illegal reentry in violation of 8 U.S.C. § 1326 has a right to challenge the removal order upon which the charge is predicated." *Id.*

### III. DISCUSSION

Mr. Pineda seeks to dismiss the indictment based on a collateral attack on the underlying deportation order. Section 1326(a) makes it illegal for a deportee to reenter or be found in the United States. 8 U.S.C. § 1326(a). However, "[a] defendant charged with illegal reentry may collaterally attack the deportation order upon which the illegal reentry charge is based." *United States v. Brown*, 354 F. Supp. 3d 362, 368 (S.D.N.Y. 2018). In order to do so, a defendant must demonstrate: (1) that he has exhausted any administrative remedies available to seek relief against the order; (2) that the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and (3) that the entry of the order was fundamentally unfair. 8 U.S.C. § 1326(d). These requirements are conjunctive; a defendant must establish all three. *See United States v. Fernandez-Antonia*, 278 F.3d 150, 157 (2d Cir. 2002).

Mr. Pineda has shown that he need not satisfy the administrative exhaustion requirement and that he was deprived of the opportunity for judicial review. However, he has not shown that the entry of the deportation order was fundamentally unfair because, although his removal proceeding suffered from a fundamental procedural error, he cannot demonstrate that he suffered prejudice as a result.

---

[2] When quoting cases, and unless otherwise noted, all citations and quotation marks are omitted and all alterations are adopted.

### A. Administrative Exhaustion

The parties agree that Mr. Pineda did not seek administrative review of his deportation order, and thus did not exhaust his administrative remedies as required by § 1326(d)(1). The record reflects that Mr. Pineda signed the box "I Do Not Wish to Contest and/or to Request Withholding of Removal" on the Form I-851 given to him by immigration officers. (Form I-851.) Mr. Pineda also checked the box stating "I understand that I have the right to remain in the United States for 14 calendar days in order to apply for judicial review. I do not wish this opportunity. I waive this right." (*Id.*) However, the Second Circuit has held that the "failure to exhaust administrative remedies bars collateral review of a deportation proceeding under Section 1326(d)(1) only where an alien's waiver of administrative review was knowing and intelligent." *United States v. Calderon*, 391 F.3d 370, 374-75 (2d Cir. 2004). "The finding of knowing and intelligent waiver is inevitably a fact-specific inquiry." *Ali v. Mukasey*, 525 F.3d 171, 174 (2d Cir. 2008). Mr. Pineda argues that he is excused from exhausting administrative remedies because Form I-851 did not provide him an opportunity to challenge the legal basis for his deportation, *i.e.* whether he had been convicted of an "aggravated felony" and was therefore subject to removal without a hearing before an IJ.[3]

---

[3] Mr. Pineda also argues that he should be excused from his failure to exhaust his administrative remedies because, *inter alia*, he was not provided with requisite information in his native language, Spanish; and the notice documents provided to him by immigration officials were not complete. (*See* Mem. at 9-10.) Because the court finds that Mr. Pineda is excused from failing to exhaust his administrative remedies because he was not given an opportunity to contest the legal basis for his deportation, it declines to address Mr. Pineda's other arguments as to this prong of the analysis.

While the Second Circuit has not directly addressed whether the expedited removal process provides a noncitizen with the opportunity to challenge the legal basis of his removal,[4] the question has produced divergent results in Circuits around the country. *Compare Etienne v. Lynch*, 813 F.3d 135, 142 (4th Cir. 2015) ("Because the Notice of Intent, Form I–851, expressly prompts aliens to raise only factual challenges to removal, we hold that Etienne was not required to raise his legal challenge to removal in order to meet the exhaustion requirement . . . .") *and Valdiviez-Hernandez v. Holder*, 739 F.3d 184, 187 (5th Cir. 2013) (same) *with Malu v. U.S. Atty. Gen.*, 764 F.3d 1282, 1288 (11th Cir. 2014) (Form I-851 provides noncitizen option to challenge both questions of law and fact).[5]

The court finds the reasoning in *Etienne* persuasive. There, the Fourth Circuit considered whether it could review defendant's expedited removal order under 8 U.S.C. § 1252(d)(1), which, as with § 1326(d), requires that a noncitizen "exhaust[] all administrative remedies available" before the Court of Appeals has jurisdiction. *Etienne*, 813 F.3d at 138. The court analyzed the "standard Form I-851"—a nearly identical form to the one provided to Mr. Pineda—and held that the form "expressly prompts aliens to raise only factual challenges to removal" but "offers no

---

[4] In a footnote in *Shunaula v. Holder*, the Second Circuit declined to "decide [] whether a defendant charged with illegal reentry following expedited removal would ever be able to challenge collaterally his removal proceedings pursuant to . . . 8 U.S.C. § 1326(d)." 732 F.3d 143, 147 n.7 (2d Cir. 2013).

[5] The Circuit courts to address exhaustion of expedited removal proceedings analyzed the issue within the context of the INA's general exhaustion provision, § 242(d)(1) ("A court may review a final order of removal only if—the alien has exhausted all administrative remedies available to the alien as of right . . . . "), and not within the context of 8 U.S.C. § 1325(d)(1) ("alien may not challenge the validity of the deportation order . . . unless the alien demonstrates that—(1) the alien exhausted any administrative remedies that may have been available to seek relief against the order.").

. . . opportunity to raise a legal challenge." (*Id.* at 141-42.) Because there was no way to raise such a challenge on the form provided to him, the court held that defendant "was not required to raise his legal challenge to removal in order to meet the exhaustion requirement." (*Id.* at 142.)

While *Etienne* arose in the context of an expedited removal order under § 1252 and not a § 1326 prosecution, its reasoning applies with full force here. *See United States v. Segura-Virgen*, 390 F. Supp. 3d 681, 695 (E.D. Va. 2019) (applying *Etienne* exhaustion analysis in the § 1326 context); *see also United States v. Cazares-Rodriguez*, No. 17-cr-327 (GPC), 2017 WL 2212031 at *5 (S.D. Cal. May 19, 2017) (finding *Etienne*'s "reasoning applies with equal force in the context of the § 1326(d) requirements"). Nowhere on the Form I-851 was Mr. Pineda provided an opportunity to contest the legal conclusion that he had been convicted of an aggravated felony.[6] As such, even though Mr. Pineda selected the check box "I Do Not Wish to Contest and/or to Request Withholding of Removal," he was never "informed that by waiving his right to contest and appeal the deportation order, he was waiving the right to contest his status as an aggravated felon, a legal conclusion that formed the basis of his deportability, his placement in expedited removal proceedings, and his ineligibility for relief from removal." *Cazares-Rodriguez*, 2017 WL 2212031, at *7. Accordingly, Mr. Pineda's waiver was not knowing and intelligent, and is excused.

---

[6] Under the section of the Form I-851 titled "I contest my deportability because:" the Form gives the following options with check boxes next to each: (1) "I am a citizen or national of the United States"; (2) I am a lawful permanent resident of the United States;" (3) "I was not convicted of the criminal offense described . . . above; and (4) I am attaching documents in support of my rebuttal and request for further review." (Form I-851.)

### B. Opportunity for Judicial Review

Mr. Pineda has also shown that the removal proceedings "improperly deprived [him] of the opportunity for judicial review." 8 U.S.C. § 1326(d)(2). Although this typically requires a showing that he could not have appealed to a federal court or obtained relief by way of habeas corpus, *see United States v. Copeland,* 376 F.3d 61, 70 (2d Cir. 2004), this prong is satisfied because Mr. Pineda has shown that "his waiver of appeal is not knowing." *United States v. Gonzalez,* No. 15-cr-21 (JMF), 2015 WL 3443942, at *12 (S.D.N.Y. May 29, 2015).

### C. Fundamental Unfairness of Entry Order

Mr. Pineda must also demonstrate that his deportation order was fundamentally unfair. To do so, he "must show both a fundamental procedural error and prejudice resulting from that error." *Fernandez-Antonia*, 278 F.3d at 159. While Mr. Pineda has shown that there was a fundamental procedural error, he has not demonstrated that he was prejudiced by it.

#### 1. Fundamental Procedural Error

As discussed above, Mr. Pineda was subjected to expedited removal proceedings because immigration officials determined his conviction under Texas Penal Code §21.11(a)(1) constituted an "aggravated felony." In an unpublished opinion in 2018, the Board of Immigration Appeals ("BIA"), applying the Supreme Court's decision in *Esquivel-Quintana v. Sessions*, 137 S. Ct. 1562 (2017), held that Texas Penal Code §21.11(a)(1) is not an aggravated felony. *In re: Miguel Angel Peralta-Colin A.K.A. Hector Flores-Pedraza,* No. AXXX XX2 648, 2018 WL 3007188 (B.I.A. Apr. 16, 2018). Mr. Pineda therefore argues that he suffered a fundamental procedural error because he was subjected to an expedited removal proceeding based on an erroneous legal determination that he had been convicted of an aggravated felony.

11

The Government does not appear to argue that, under current controlling authority, Mr. Pineda's Texas conviction constitutes an aggravated felony. Instead, the Government argues that whether it constitutes an aggravated felony under current law is irrelevant; instead, it urges the court to adopt the Fourth Circuit's approach in *United States v. Lopez-Collazo*, 824 F.3d 453 (4th Cir. 2016), *cert. denied sub nom. Lopez-Collazo v. United* States, 137 S. Ct. 628 (2018), which held that the court must evaluate whether the noncitizen's offense conviction was an aggravated felony *at the time* of his or her removal proceedings. Under controlling authority at that time, the Government argues, Mr. Pineda's Texas conviction qualified as an aggravated felony, and he therefore did not suffer a fundamental procedural error.

While the Second Circuit has not answered this particular question, its relevant immigration decisions reflect a view that errors are to be assessed from the vantage point of present-day authority. In *Brown*, the court analyzed the Second Circuit's decisions in *United States v. Copeland*, 376 F.3d 63 (2d Cir. 2004) and *United States v. Calderon*, 391 F.3d at 373, and held that, "Second Circuit law establishes that an IJ commits fundamental error when she advises a noncitizen that she is ineligible for discretionary relief based upon an erroneous BIA interpretation of the INA that has since been corrected." *Brown*, 354 F. Supp. 3d at 370; *see also United States v. Lopez*, 445 F.3d 90, 100 (2d Cir. 2006) (deportee was "denied a realistic opportunity for judicial review" based on "the IJ and BIA's affirmative misstatements" about the deportee's eligibility to seek relief under § 212(c), even though the IJ's determination only became "legally incorrect" years after the deportation proceeding due to a subsequent Supreme Court opinion). The court agrees with the holding of *Brown*: under the principle articulated in *Copeland, Calderon,* and *Lopez*, for the purposes of the fundamental unfairness prong in a collateral attack of removal under § 1326(d), the court must assess whether

errors in law occurred from the vantage point of current authority. *See Brown*, 354 F. Supp. 2d at 370-71 (rejecting the Government's argument that the "[c]ourt must evaluate any alleged procedural error based on the prevailing law at the time of [d]efendant's hearing, because, *inter alia*, "a judicial construction of a statute is an authoritative statement of what the statute meant before as well as after the decision of the case giving rise to that construction"). There is no meaningful difference between an IJ advising a deportee about the availability of relief based on a then-erroneous interpretation of the INA "that has since been corrected," *Brown*, 354 F. Supp. 2d at 370, and immigration officials erroneously categorizing a deportee's offense of conviction as an aggravated felony, and thus designating the deportee for expedited removal. In either instance, Second Circuit precedent establishes that the court must determine whether or not such an error was made with the advantage of hindsight.

Mr. Pineda argues, and the Government does not appear to the dispute, that his underlying Texas conviction does not constitute an aggravated felony under current authority. That view was affirmed by the BIA in *In re: Miguel Angel Peralta-Colin*, 2018 WL 3007188, at *2, which the court finds persuasive. Accordingly, because Mr. Pineda's Texas conviction is not an aggravated felony under current controlling authority, he has established that his removal proceeding suffered from a fundamental procedural error.

      2.   Prejudice

Mr. Pineda's motion falters, however, because he has failed to demonstrate that he suffered prejudice as a result of that procedural error. Mr. Pineda argues that had he been afforded a proceeding before an IJ, he would have had the right to ask for voluntary departure, and there is a reasonable probability that his request would have been granted. The court disagrees.

For a deportee to show prejudice on the theory that he was denied the opportunity to seek voluntary departure, "the noncitizen must demonstrate *both* a reasonable probability that he would have sought voluntary departure *and* that such relief would have been granted." *Brown*, 354 F. Supp. 3d at 371. Even if the court assumes Mr. Pineda would have sought voluntary departure[7], he nonetheless bears the burden to demonstrate an IJ would have granted such relief. IJs have broad discretion to grant voluntary departure. *See Patino v. Holder*, 520 F. App'x 18, 20 (2d Cir. 2013) (citing *In re Arguelles-Campos*, 22 I. & N. Dec. 811, 819 (BIA 1999)). The BIA has described the factors to be considered in connection with the review of such a request as follows:

> [M]any factors may be weighed in exercising discretion with voluntary departure applications, including the nature and underlying circumstances of the deportation ground at issue; additional violations of the immigration laws; the existence, seriousness, and recency of any criminal record; and other evidence of bad character or the undesirability of the applicant as a permanent resident. We further stated that discretion may be favorably exercised in the face of adverse factors where there are compensating elements such as long residence here, close family ties in the United States, or humanitarian needs.

*Id.* at 817.

Mr. Pineda has failed to demonstrate that there is a reasonable probability that an IJ analyzing these factors would have granted him a voluntary departure. Mr. Pineda argues that "his years in the community and his former temporary protected status" demonstrate that he had a reasonable probability of being

---

[7] While Mr. Pineda notes he "would have had the right" to seek a voluntary departure (Reply at 6), he provides no other evidence, including in his affidavit, that he would have exercised that right.

granted voluntary departure (Reply at 6), but fails to provide support for such a conclusion. Further, Mr. Pineda does not address the seriousness of his underlying conviction, which involved sexual conduct with a minor under the age of 17, and would have strongly counseled against a grant of voluntary departure. Given his criminal record, Mr. Pineda would have "almost certainly been required to demonstrate the existence of unusual or outstanding countervailing equities" in order to be granted voluntary departure, *see United States v. Copeland*, 369 F. Supp. 2d 275, 334 (E.D.N.Y. 2005), and he has presented no evidence to the court that he would have been successful in such an endeavor. Accordingly, he has failed to establish the prejudice prong of the fundamental unfairness inquiry.

### IV. CONCLUSION

For the reasons stated above, Defendant's (Dkt. 13) motion is DENIED.

SO ORDERED.

Dated:   Brooklyn, New York
         October 8, 2020

                                        /s/ Nicholas G. Garaufis
                                        NICHOLAS G. GARAUFIS
                                        United States District Judge