UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
───────────────────────────────
UNITED STATES OF AMERICA,

                              **MEMORANDUM & ORDER**
                              **18-CR-523 (NGG)**

      -against-

PABLO ARTURO PINEDA,

                Defendant.
───────────────────────────────

NICHOLAS G. GARAUFIS, United States District Judge.

Defendant Pablo Arturo Pineda is charged with one count of illegal reentry in violation of 8 U.S.C. §§ 1326(a) and (b)(1). (*See* Indictment (Dkt. 1).) On October 8, 2020, the court denied Mr. Pineda's motion to dismiss the indictment, holding that Mr. Pineda had failed to demonstrate the necessary prejudice to succeed on his collateral attack of his underlying removal order pursuant to § 1326(d). (Oct. 8, 2020 Mem. & Order ("M&O") (Dkt. 27).) Advancing new arguments, Mr. Pineda now seeks reconsideration of the M&O. (Def. Mot for Recons. ("Mot.") (Dkt. 29).) For the reasons explained below, Mr. Pineda's motion is DENIED.

## I. LEGAL STANDARD

"A motion for reconsideration is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *Drapkin v. Mafco Consol. Grp, Inc.*, 818 F. Supp. 2d 678, 695 (S.D.N.Y. 2011). Accordingly, "[t]he threshold for prevailing on a motion for reconsideration is high." *Nakshin v. Holder*, 360 F. App'x 192, 193 (2d Cir. 2010). A motion for reconsideration "will generally be denied unless the moving party can point to controlling decisions or data the court overlooked," *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684

1

F.3d 36, 52 (2d Cir. 2012), or if "the defendant identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust*, 729 F.3d 99, 104 (2d Cir. 2013). Finally, a motion for reconsideration is "not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple." *Analytical Surveys*, 684 F.3d at 52.

## II. DISCUSSION

The court assumes familiarity with the M&O and the facts relevant to this case. To mount a successful collateral attack against a deportation order upon which a charge of illegal entry is based, a defendant must demonstrate: (1) that he has exhausted any administrative remedies available to seek relief against the order; (2) that the deportation proceedings at which the order was issued improperly deprived him of the opportunity for judicial review; and (3) that the entry of the order was fundamentally unfair. *See* 8 U.S.C. § 1326(d). In its M&O, the court held that Mr. Pineda was excused from satisfying the first prong under § 1326(d), and satisfied the second prong, because he was not provided with an opportunity to challenge the legal basis for his conviction, *i.e.* whether he had been convicted of an "aggravated felony" and was therefore subject to removal without a hearing before an Immigration Judge ("IJ"). (M&O at 8-11.) The court then turned to the fundamental unfairness prong, which requires a defendant to show "both a fundamental procedural error and prejudice resulting from that error." *See United States v. Fernandez-Antonia*, 278 F.3d 150, 159 (2d Cir. 2002). The court held that Mr. Pineda demonstrated fundamental procedural error because his underlying conviction under Texas law "is not an aggravated felony under current controlling authority." (M&O at

2

13.) However, the court held that Mr. Pineda failed to demonstrate that he suffered prejudice as a result of that procedural error. The court reasoned that, absent the procedural error of classifying his Texas offense as an aggravated felony, Mr. Pineda would have had the opportunity to appear before an IJ and seek voluntary departure. Reviewing the factors generally considered in the context of such a request, the court held that "Mr. Pineda has failed to demonstrate that there is a reasonable probability that an IJ . . . would have granted him a voluntary departure." (*Id.*)

Mr. Pineda's request for reconsideration puts forward an argument that he did not advance in his original briefing or at oral argument. Mr. Pineda now argues that analyzing whether there was a reasonable probability that he would have been granted voluntary departure by an IJ is not the proper test to determine whether he has satisfied the prejudice prong under § 1326(d). Instead, Mr. Pineda argues that "the question is whether there is a reasonable probability that [the defendant] would have succeeded on appeal of his deportation order," and that, here, "an appeal would have resulted in vacatur of the baseless administrative removal order and the end of the case." (Mot. at 2.)

First, Mr. Pineda is using his motion for reconsideration to raise new arguments that he could have, but did not, originally raise. In his briefing to the court on his motion to dismiss the indictment, Mr. Pineda argued that, should the court find fundamental unfairness, Mr. Pineda "still must demonstrate prejudice." (Def. Reply in Supp. of Mot. to Dismiss ("Reply") (Dkt. 20) at 6.) Mr. Pineda argued that he had been prejudiced because "[h]ad [he] had his removal proceeding before an immigration judge . . . the judge could have allowed Mr. Pineda to participate in voluntary departure." (Def. Mot to Dismiss (Dkt. 13-1) at 12-13.) Mr. Pineda then described why, in his view, the factors generally considered by IJs when determining voluntary departure pointed in

3

favor of finding that there was a reasonable probability that an IJ would have granted him voluntary departure. (Reply at 6.) In other words, the court adopted the test articulated by Mr. Pineda in his motion to dismiss the indictment, albeit coming to a different conclusion than Mr. Pineda had hoped. To seek reconsideration of that decision by arguing for the first time that this test was not proper constitutes the type of "second bite at the apple" that motions for reconsideration are not designed to provide. *See Analytical Surveys*, 684 F.3d at 52.

Second, Mr. Pineda's motion for reconsideration fails on the merits.

Mr. Pineda argues that analyzing whether there is a reasonable probability that an IJ would have granted him voluntary departure impermissibly gives the Government a "hypothetical do-over[]" to which it is not entitled. (Mot at 2.) Mr. Pineda urges that while the court "can and must consider the hypothetical outcome of an appeal from the challenged order," (*id.*), because his underlying state conviction was not an aggravated felony, "an appeal would have resulted in vacatur of the baseless administrative order and the end of the case." (*Id.*) Assuming the immigration officer terminated Mr. Pineda's expedited removal proceeding as the officer should have, Mr. Pineda suggests that although "the government *may* then institute a different kind of removal proceeding in immigration court if other deportation grounds apply . . that did not happen here and it is not relevant." (*Id.*)

As the Government aptly points out, Mr. Pineda's argument for reconsideration suggests "that if the administrative officer had determined that [Mr.] Pineda was not an aggravated felon, but had entered the country illegally and committed a felony, the administrative officer would have been obligated to dismiss the expedited removal, release [Mr.] Pineda and take no further actions to remove" Mr. Pineda. (Gov't Mem. in Opp. to Mot. for

4

Recons. (Dkt. 31) at 8, n.3.) Yet, Mr. Pineda fails to establish that such a counterintuitive result is required by controlling precedent or by § 1326(d) itself. To begin, Mr. Pineda argues that this outcome is compelled by 8 C.F.R. § 238.1(d)(2)(iii), which states that "if the deciding Service officer finds that the alien is not amenable to removal under section 238 of the Act, the deciding Service officer shall terminate the expedited proceedings under section 238 of the Act." (Mot at 2 (quoting 8 C.F.R. § 238.1(d)(2)(iii).) However, the regulation continues that the Service officer in such a situation "shall, where appropriate, cause to be issued a notice to appear for the purpose of initiating removal proceedings before an immigration judge." (*Id.*) In other words, while the text of the regulation explicitly directs the immigration official to terminate expedited proceedings when removal under section 238 is inappropriate (as it was for Mr. Pineda), it also directs that official to initiative separate removal proceedings before an immigration judge where appropriate. Nonetheless, Mr. Pineda suggests that the initiation of separate proceedings "did not happen here, and is not relevant." (Mot. at 2.) But immigration officials in this case did not initiate separate removal proceedings for Mr. Pineda because they (mistakenly) believed that Mr. Pineda could be removed under section 238. Mr. Pineda does not provide a reason why the court should assume that, had the immigration officials properly concluded that Mr. Pineda was not removable under section 238, they would not have initiated separate removal proceedings in light of Mr. Pineda's felony conviction.

Furthermore, Mr. Pineda's arguments for why the court, in evaluating prejudice under § 1326(d), clearly erred by considering the outcome of such hypothetical separate proceedings is unavailing. In *Fernandez-Antonia*, the Second Circuit rejected a defendant's attempt to "equat[e] procedural flaw with prejudice" in his collateral attack of his deportation under § 1326(d). *Fernandez-Antonia*, 278 F.3d at 159. Instead, the court held "that in

5

order for an alien to demonstrate on collateral review that his hearing was so fundamentally unfair that it constituted a denial of his Fifth Amendment right to due process, he must show both a fundamental procedural error and prejudice resulting from that error." (*Id.*) The court then considered whether the defendant might have been granted relief by an immigration judge absent the underlying fundamental procedural errors. *Id.* at 160-161. That is precisely the analysis undertaken in the M&O. (*See* M&O at 13-15.)

Mr. Pineda argues the court erred by "mechanically" applying *Fernandez-Antonia*, because the court did not consider "the type of procedural error involved." (Mot. at 3 n.3.) He suggests that when the Second Circuit held that no relief was warranted under § 1326(d) "if the alien would have been deported even after a procedurally perfect proceeding," the court "did not mean any *possible* 'perfect proceeding,' only a remanded proceeding based on the same removability charges" in which the error had occurred. (*Id.* (citing *Fernandez-Antonia*, 278 F.3d at 159) (emphasis in original).) Mr. Pineda's suggested gloss on *Fernandez-Antonia* is nowhere to be found in the opinion itself, and Mr. Pineda presents no other Second Circuit precedent to support it. Moreover, as discussed, Mr. Pineda's argument rests on an assumption—that "correcting the error [in Mr. Pineda's case] would lead automatically to vacatur of the removal order and termination of the case"—that is similarly unsupported. (Mot. at 3 n.3.)

Finally, Mr. Pineda argues that the Supreme Court's decision in *Lee v. United States*, 137 S. Ct. 1958 (2017), holds that the court cannot consider a hypothetical future proceeding when evaluating prejudice in a case like Mr. Pineda's. *Lee* did not involve a collateral attack under § 1326(d), but rather a claim for ineffective assistance of counsel in which the defendant sought to vacate his conviction entered on a guilty plea because counsel had failed

6

to advise him of the immigration consequences of his plea, thereby depriving him of a trial on those charges. *Lee*, 137 S. Ct. at 1965. Neither the Supreme Court nor the Second Circuit has held that *Lee*—a Sixth Amendment case about a defendant's decision to plead guilty or face trial—is controlling in the context of a collateral attack under § 1326(d). Mr. Pineda's attempt to analogize his case to *Lee* fails to account for the vastly different procedural postures of the two cases. Furthermore, accepting Mr. Pineda's argument would, in effect, reduce the fundamental unfairness prong under §1326(d) to a review only of whether or not a procedural error had been committed, a result foreclosed by *Fernandez-Antonia*. *Lee* is therefore not grounds for the court to reconsider the M&O.

The court has considered Mr. Pineda's other arguments, and likewise finds they do not merit reconsideration of the M&O.

### III. CONCLUSION

For the foregoing reasons, Mr. Pineda's Motion for Reconsideration (Dkt. 29) is denied.

SO ORDERED.

Dated:   Brooklyn, New York
         December 8, 2020

                                    /s/ Nicholas G. Garaufis
                                    NICHOLAS G. GARAUFIS
                                    United States District Judge

7